UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| VISIONMASTER, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:14-cv-224-NT |
| | ) | |
| ASC INTERNATIONAL, | ) | |
| | ) | |
| Defendant | ) | |

### RECOMMENDED DECISION ON DEFENDANT'S MOTION TO DISMISS

The defendant, ASC International, Inc., moves to dismiss this action in favor of arbitration pursuant to the terms of contracts between it and two of the plaintiff's predecessors in interest. I recommend that the court grant the motion.

### I.  Factual Background

The plaintiff, VisionMaster, Inc., began operations under that name in 2011. Exh. A to Declaration of Joy R. Anderson ("Anderson Decl.) (ECF No. 8-3), at 1. It alleges that it is a successor to the rights of Crescent Technologies, Inc., which originally claimed ownership of the VisionMaster mark. Complaint (ECF No. 1-1) ¶ 9; Declaration of Jon Arneson ("Arneson Decl.") (ECF No. 8-2) ¶ 3. The defendant and Crescent entered into a Design, Development and Distribution Agreement in 2001. Design, Development and Distribution Agreement ("Crescent Agreement") (Exh. B to Anderson Decl.) (ECF No. 8-4).

Also in 2001, the principals of Crescent started Delta Indus Systems. Arneson Decl. ¶ 3. Delta later asserted that it had succeeded to the rights in the VisionMaster mark. Exh. E to

Anderson Decl. Shahzad F. Kirmani was a principal of all three of these companies. Exhs. A, B & F to Anderson Decl.

The Crescent Agreement gave ASC the exclusive right to purchase sensors from Crescent for integration into ASC's products for distribution. Crescent Agreement § 2.1. The Crescent Agreement contains an article regarding dispute resolution, which includes the provision that "the sole and exclusive procedure[] for the resolution of disputes between the Parties arising out of or relating to this Agreement" is a 60-day negotiation period followed by mediation upon written request, followed by arbitration. *Id*. §§ 9.1-9.3.[1] The Crescent Agreement states that it is to be governed by and construed in accordance with Minnesota law, in the state and federal courts in Minnesota. *Id*. § 10.4. The Crescent Agreement was signed by Kirmani as president of Crescent. *Id*. at 13.

On the same day that the Crescent Agreement took effect, the defendant and Delta entered into a Design, Development, and Distribution Agreement (the "Delta Agreement") (Exh. C to Anderson Decl.) (ECF No. 8-4). The Delta Agreement is similar to the Crescent Agreement in all pertinent respects. In August 2001, Crescent ceased operations and granted the defendant the right to manufacture "any and all hardware manufactured by Crescent Technologies, Inc. in the past." Letter Agreement, dated August 27, 2001, Exh. D to Anderson Decl. The defendant continued to manufacture and sell its solder paste inspection systems under the VisionMaster mark pursuant to this agreement. Anderson Decl. ¶ 4.

The parties added an addendum to the Delta Agreement in 2007. Addendum B to Delta Agreement (Exh. E to Anderson Decl.) (ECF No. 8-4). In October 2010, Delta Indus announced that it was unilaterally ending the defendant's exclusivity but would continue to work with the

---

[1] There are two Sections 9-3; the provision in question is contained in the second one.

defendant as usual.  Email from Shahzad F. Kirmani to Jon Carl Arneson, dated October 11, 2010, Exh. F to Anderson Decl.  The defendant continued to distribute products under the VisionMaster mark until Delta Indus stopped contacting the defendant after the defendant began to request warranty service on certain Delta Indus products.  Arneson Decl ¶¶ 6-7.  The defendant now sells its solder paste inspection systems under its trademark VISIONPRO.  *Id*. ¶ 8.  The plaintiff filed this action in Maine Superior Court (Cumberland County) by complaint dated March 21, 2014, alleging that the defendant was improperly selling solder paste inspection machines using the plaintiff's trademarks, trade dress, and copyrighted software.  ECF No. 1; Complaint.

## II. Applicable Legal Standard

The Federal Arbitration Act ("FAA") establishes a federal policy favoring arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983).  The First Circuit has held that a party that attempts to compel arbitration pursuant to the FAA must show that (1) a valid agreement to arbitrate exists, (2) that the movant is entitled to invoke the arbitration clause, (3) that the other party is bound by that clause, and (4) that the claim asserted comes within the clause's scope.  *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 375 (1st Cir. 2011). Arbitration is a matter of contract, and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *Large v. Conseco Fin. Serv. Corp.*, 292 F.3d 49, 52 (1st Cir. 2002).

The First Circuit has recently reminded trial courts that they must "ordinarily honor" the choice of contracting parties to arbitrate.  *Joca-Roca Real Estate, LLC, v. Brennan*, No. 14-1353, 2014 WL 6737103, at *1 (1st Cir. Dec. 1, 2014).

## III. Discussion

The question before the court is whether the plaintiff is bound by the terms of the arbitration clauses of the Design and Development Agreements as the successor in interest to the parties that signed the agreements. This question is one that is generally resolved by the courts. *See, e.g., Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1371 (Fed. Cir. 2008); *Bridas A.S.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 354 (5th Cir. 2003).

On this issue, the plaintiff cites authority only for the unremarkable proposition that a party is ordinarily not bound by an arbitration clause in a contract to which it is not a party. Plaintiff's Opposition to Defendant's Motion to Dismiss ("Opposition") (ECF No. 9) at 3-4. This is true whether the contract law applicable is federal common law, Minnesota law (called for by the Agreements), or Maine law (the jurisdiction in which this action was brought). *See Bridas*, 345 F.3d at 353-54; *Illinois Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 803 (Minn. 2004); *Roosa v. Tillotson*, 1997 ME 121, ¶ 5, 695 A.2d 1196, 1198. There are several well-established exceptions to this rule, however, none of which the plaintiff mentions.

The Supreme Court counsels that the FAA provides that "background principles of state contract law," including the question of who is bound by a particular contract or term thereof, "allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel," *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009) (citation and internal quotation marks omitted). The Supreme Court specifically held that a ruling that nonparties to a contract are categorically barred from relief under the FAA was erroneous. *Id.* at 631.

Several federal courts have held that a successor in interest may enforce an arbitration clause in a contract signed by its predecessor. *E.g., Bridas,* 345 F.3d at 360-61 (discussing *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000)); *Cheraghi v. MedImmune, LLC*, Civil Action No. 8:11-cv-01505(AW), 2011 WL 6047059, at *5 (D. Md. Dec. 5, 2011); *Dunn v. CitiGroup Global Mkts., Inc.*, No. 08-80926-CIV, 2009 WL 909480, at *2 (S.D. Fla. Apr. 1, 2009) (and cases cited therein). The instant case presents a different factual situation, in which a signatory seeks to enforce an arbitration clause against a signatory's successor in interest, which may alter the outcome under a theory of estoppel, *see, e.g., Bridas*, 345 F.3d at 360-61, but the difference does not affect the analysis, for example, under a theory of assumption.

Thus, in *Cheraghi*, the plaintiff executed an employee agreement containing an arbitration clause with MedImmune, Inc. 2011 WL 6047059 at *1. Five and a half years later, MedImmune, Inc. was acquired by a large medical corporation of which it became a subsidiary under the name MedImmune, LLC. *Id*. The plaintiff filed suit four years thereafter against the subsidiary alleging, *inter alia*, illegal employment practices. *Id*. MedImmune, LLC, moved to dismiss in favor of arbitration, *id*. at *2, and the court granted the motion. *Id*. at *7. Noting that MedImmune, LLC, "assumed the rights that MedImmune, Inc. enjoyed before the merger," the court held that "allowing MedImmune, LLC to enforce the arbitration agreement fails to impair Cheraghi's interests under the Employee Agreement. In essence, the only thing that has changed is the suffix after MedImmune, Inc.'s name; everything else is the same." *Id*. at *6.

Similarly, in *General Conference of Evangelical Methodist Church v. The Crossing Church, Inc.*, No. 1:11-cv-00643-REB, 2013 WL 2422748 (D. Idaho June 3, 2013), the plaintiff sought to compel arbitration of its claim against the corporate successor of the entity with which it had a signed agreement to arbitrate such disputes. *Id*. at *1-*2. The court held, under Idaho law,

that the defendant was an "alter ego" of the entity that had executed the contract. *Id*. at *2-*4. The court found it particularly significant that the successor corporation "is now attempting the claim the benefits of the contractual relationship between [the plaintiff and the defendant's corporate predecessor] while simultaneously attempting to avoid the burdens th[at] th[e] contractual relationship imposes (alternative dispute resolution)." *Id*. at *4. That is what VisionMaster is attempting to do in the case at hand.

The plaintiff asserts that *Datatreasury* "addressed a strikingly similar issue, and declined to order arbitration." Opposition at 5. To the contrary, the *Datatreasury* court, after listing the six established exceptions to the principle that "a party is not bound by an arbitration clause unless it is a signatory to the underlying contract[,]" observed that the appellants "do not contend that any of these theories applies in the instant case[,]" but rather assert that the appellee "is bound by the arbitration clause because it 'runs with the patent[,]'" a theory that the court rejected. 522 F.3d at 1372. It is incorrect to assert, as the plaintiff does, Opposition at 6, that the defendant has not claimed any of the listed exceptions in this case. It has argued that both the "alter ego" and the "assumption" exceptions apply. Motion at 11; Reply at 4. I agree.

The defendant also argues that this court should not decide the question presented by its motion because the arbitration rules of the International Chamber of Commerce, which are incorporated by reference into the Agreements, provide that an arbitrator should decide any question of jurisdiction resulting from claims "concerning the existence, validity or scope of the arbitration agreement[.]" Motion at 12-13. However, the question of whether an arbitration clause -n a particular contract binds the successor-in-interest to one of the signatories does not challenge the existence, validity, or scope of the contract. The case law cited by the defendant in support of this argument is distinguishable.

6

In *Fantastic Sams Franchise Corp. v. FSRO Ass'n Ltd.*, 683 F.3d 18 (1st Cir. 2012), the First Circuit specifically noted that the Supreme Court has determined that a court, rather than an arbitrator, should decide "whether a party to an arbitration agreement could force a nonparty into arbitration," *id*. at 25, the precise issue presented here. Neither of the two Eighth Circuit cases also cited by the plaintiff in this regard suggests a different outcome, even if they had binding force in this circuit. Indeed, the court makes clear in both opinions that the agreement to arbitrate threshold or "gateway" questions of arbitrability applies to questions "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Green v. Supershuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011)(citing *Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2777 (2010)); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 877-78 (8th Cir. 2009). In the case at hand, neither party contends that the Agreements do not include an agreement to arbitrate, which is the only portion of the test that could conceivably apply to the dispute presented here.

I decline the defendant's invitation, Motion at 14-18, to address the question of whether the arbitration clauses in the Agreements cover the specific disputes set out in the complaint. That question, for the reasons just stated, should be addressed by the arbitrator. *Fantastic Sams*, 683 F.3d at 25.

I recommend that this action be dismissed rather than stayed because this court cannot compel arbitration in the District of Minnesota, which is the forum specified in the Agreements. *See Independence Receivable Corp. v. Precision Recovery Analytics, Inc.*, 754 F.Supp.2d 782, 786 (D. Md. 2010) (majority of courts hold that FAA does not permit district courts to compel arbitration in other jurisdictions).

### IV.     Conclusion

For the foregoing reasons, I recommend that the defendant's motion to dismiss be **GRANTED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 3rd day of December, 2014.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge